Elizabeth Joan **ALLEN** and Alice Edna Stuhmer, individually and as Executrices of the Estate of Chester A. Allen, Deceased, Appellants,

v.

**UNITED STATES** of America, Appellee.

**No. 160, Docket 29924.**

United States Court of Appeals Second Circuit.

Argued March 1, 1966.

Decided March 29, 1966.

**152**

J. Courtney McGroarty, Wingate & Cullen, Brooklyn, N. Y. (John F. Anderson, Brooklyn, on the brief), for appellants.

Benjamin M. Parker, Atty., Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys.,

Dept. of Justice, Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Jerome Ditore, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, KAUFMAN, Circuit Judge, and FEINBERG, District Judge.*

KAUFMAN, Circuit Judge:

Contending that a rather unorthodox bequest by Chester A. Allen, deceased, to his wife, Kathleen M. Allen, qualifies for the marital deduction,[1] the Executrices under Allen's will appeal from the dismissal of their complaint seeking a refund of estate taxes in the amount of $18,271.33.[2] For the reasons set forth below, we believe that the District Judge reached the proper result and, therefore, affirm.

The facts are essentially uncontroverted and lend themselves to simple statement. On September 3, 1953, Chester A. Allen executed his last will and testament.[3] In the preamble, Allen noted a "problem" of great concern to him which apparently was the predominant motivating factor in shaping, as he did, the form of his testamentary disposition.[4] Allen, who had been previously married, quite understandably wanted to be certain that his second wife, Kathleen, would, upon her death, treat Alice Edna Stuhmer, the deceased's daughter by his previous

---

* Sitting by designation.

1. Internal Revenue Code of 1954, § 2056 (a) provides:

   For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

2. This action was heard on cross-motions for summary judgment. The District Judge denied the Executrices' motion for judgment in the full amount of the requested refund and granted the government's motion to dismiss the complaint with prejudice.

3. At argument, the Court was advised that Allen, an attorney, drafted his own will.

4. The preamble to Allen's will stated:

   I have the problem of taking care of my daughter Alice Edna Stuhmer, a daughter by my first marriage, in order to fit in with the rights and privileges of my wife and within the arrangements of the law. In an effort to treat all of my children in exactly the same manner, I have arranged this Will in alternate parts. PART I will be effective provided by [sic] wife, Kathleen M. Allen, will make the agreement therein provided in form satisfactory to the Surrogate under whose jurisdiction this Will will be probated. PART II will be effective only in the event that my wife, Kathleen M. Allen, chooses not to make the agreement which I suggest and request, or is unable to do so.

marriage, equally with the three children of his second marriage. To achieve this goal, Allen decided to divide his will into two "Parts."

In Part I, the decedent bequeathed his entire estate to Kathleen on condition that she "sign and execute an agreement suitable to the Surrogate under whose jurisdiction this Will will be probated, and file it in the Surrogate's Court, or any such other place as the Surrogate may direct, under which agreement she is to contract to make a Will and leave her estate, which is to include the assets of her own estate * * * [after certain specific bequests not in issue here] to be shared in equal parts among my four children * * *." Part II of Allen's will was to become operative only if Kathleen chose not to make the agreement specified in Part I. In that event, Allen bequeathed to his wife "such share of my estate as the law requires to be given to a surviving spouse" and left the residue of the estate to Alice Edna Stuhmer, the daughter of his first marriage.

Allen died on July 28, 1961. On August 6, 1961, Kathleen executed the "required agreement" in compliance with Part I of her husband's will; however, the necessary approval by the Surrogate was not obtained until July 1, 1964. In computing the taxes to be paid by Allen's estate, the Executrices sought to obtain the maximum marital deduction, which the Commissioner disallowed in its entirety because Allen's bequest to his wife constituted a non-qualifying terminable interest as described in Internal Revenue Code, of 1954, § 2056(b) (1).[5] The District Judge found that Mrs. Allen's interest more closely resembled a life estate with a broad, but not unlimited, power to consume, see In re Britt's Will, 272 App. Div. 426, 71 N.Y.S.2d 405 (3d Dept. 1947); In re Mitchell's Will, 15 Misc.2d 651, 181 N.Y.S.2d 436 (Surr.Ct., Nassau County, 1959); In re Ingraham's Estate, 197 Misc. 402, 95 N.Y.S.2d 183 (Surr.Ct., Bronx County, 1950), rather than the surviving spouse's interest under a joint or mutual will, which interest qualified for the marital deduction in Estate of Vermilya, 41 T.C. 226 (1963), and in Newman v. United States, 176 F.Supp. 364 (S.D.Ill.1959). On this basis, he upheld the Commissioner's determination that Allen's bequest to his spouse was a non-qualifying terminable interest. Compare Estate of Pipe v. Commissioner of Internal Revenue, 241 F.2d 210 (2d Cir.), cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957). We reach the same result as the District Judge, albeit on a different ground.[6]

## I

When Congress sought to equalize the tax burdens of estates in community property and common law jurisdictions by utilizing the device of the marital deduction as modified by the terminable interest rule, it chose a technique which required the draftsmen of testamentary instruments to be meticulous in adhering to the formal requirements of section 2056. And, while the-

5. Internal Revenue Code of 1954, § 2056 (b) (1) provides in pertinent part:

Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse * * *.

6. The ground on which we rest here was not urged below but was briefed and argued in this Court. But, if right on any theory, the Commissioner's determination should be sustained. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937). See also Towers v. Commissioner of Internal Revenue, 247 F.2d 233 (2d Cir. 1957), cert. denied 355 U.S. 914, 78 S.Ct. 343, 2 L.Ed.2d 274 (1958).

terminable interest rule is, indeed, a thicket, the Congressional purpose in disqualifying terminable bequests was certainly not to elevate form above substance. It was, instead, to prevent the wholesale evasion of estate taxes which the skillful employment of terminable interests could have easily achieved. For example, but for the terminable interest rule, a husband in a common law jurisdiction could bequeath a life interest in property to his wife which could qualify for the marital deduction and thus neither be taxed in his nor in her estate. Although the terminable interest rule is aimed primarily at preventing such results, see Sugarman, Estate and Gift Tax Equalization, 36 Calif.L.Rev. 223, 230–231, 236–238 (1948), it nevertheless does, at times, ensnare bequests which were designed to accomplish objectives other than the avoidance of estate taxation. For this reason, the Supreme Court has observed, in its most recent pronouncement on the terminable interest rule, that "[t]he achievement of the purposes of the marital deduction [remains] * * * dependent to a great degree upon the careful drafting of wills." Jackson v. United States, 376 U.S. 503, 511, 84 S.Ct. 869, 873, 11 L.Ed.2d 871 (1963).

## II

While section 2056(a) sets out the basic rule for determining the marital deduction, section 2056(b) (1) disqualifies a terminable interest passing from a decedent to his surviving spouse. A terminable interest is defined, in general, as one which possesses the three characteristics found in sections 2056(b) (1) (A) and (B).[7] First, it must be an interest in property which will terminate upon the occurrence or non-occurrence of an event or upon the lapse of time. Second, another interest in the same property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. And third, such other person must be able to possess or enjoy a part of such property upon the termination of the

spouse's interest. With certain exceptions not relevant to this case, the interest bequeathed to a spouse qualifies for the marital deduction unless all three of these characteristics are present.

▪ It is now well settled that the determination of whether an interest is terminable is to be judged in the light of events at the precise moment of the decedent's death. If, viewed at the time of the death, the interest bequeathed to the spouse might terminate under some circumstances, that interest is terminable for the purposes of section 2056(b) (1) regardless of what subsequent events came to pass. Thus, a reviewing court must focus on the moment of the testator's death to determine the nature of a marital gift for estate tax purposes, unless the Internal Revenue Code expressly provides to the contrary, as in section 2056(b) (3). Jackson v. United States, supra; United States v. Edmonson, 331 F.2d 676 (5th Cir. 1964); Bookwalter v. Lamar, 323 F.2d 664 (8th Cir.), cert. denied, 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed. 2d 84 (1963); United States v. Mappes, 318 F.2d 508 (10th Cir. 1963); United States v. Quivey, 292 F.2d 252 (8th Cir. 1961); Cunha's Estate v. Commissioner of Internal Revenue, 279 F.2d 292 (9th Cir.), cert. denied, 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed.2d 373 (1960); Starrett v. Commissioner of Internal Revenue, 223 F.2d 163 (1st Cir. 1955).

## III

▪ Applying these established guidelines to Allen's marital bequest, it is apparent that the devise runs afoul of the terminable interest rule. Viewed at the moment of his death, the bequest to Allen's spouse under Part I of his will was subject to at least two contingencies, each of which could have caused it to fail: (1) Kathleen might not have elected to take under Part I at all; or (2) even if she had executed the agreement to devise all of her property to Allen's four children equally, there remained the need for the Surrogate's approval and the possibility that he might not give it. If the de-

7. See note 5, supra.

vise under Part I of the will failed because of these contingencies, Alice Edna Stuhmer, Allen's daughter by his first wife, would have enjoyed or possessed part of her father's property upon the termination of her stepmother's interest. As previously noted, in Part II of his will, Allen bequeathed to Alice an interest in the residue of his estate contingent upon Kathleen's failure to elect to take under Part I. Thus, at the crucial moment of Allen's death, the bequest to his spouse, could not qualify for the marital deduction because all three characteristics of a terminable interest were present. The interest passing to Allen's spouse under Part I could have lapsed by her failure to execute the "required agreement" or by the refusal of the Surrogate to approve. As a result, a "third party," specifically, Allen's daughter by the first marriage, could have enjoyed or possessed the residue of her father's estate by virtue of the contingent interest which passed to her under Part II.[8]

▮ The Executrices attempt to negate the validity of this analysis by citing Treas.Reg. § 20–2056(e)–2 (c) [9] which provides in substance that if a surviving spouse elects a statutory share of the decedent's estate in lieu of dower or curtesy,

the property transferred pursuant to that election is deemed to pass from the decedent to the surviving spouse. Urging that since in Part II of his will Allen actually bequeathed to his spouse no more than her statutory share, the Executrices claim that the availability of a choice between Part I and Part II loses significance.

We find this contention unpersuasive. The Regulation on which the Executrices rely was designed to overcome the statutory requirement that property must "pass" from the decedent to his surviving spouse in order to qualify for the marital deduction and is limited to specific situations in which Congress expressly intended the spouse's interest in an estate to qualify for the marital deduction. See section 2056(e) (3). It is undisputed that Kathleen did not elect to take her statutory share in lieu of her inheritance under her husband's will. Indeed, she elected instead to inherit under the will. Consequently, the Regulation is inapposite and there is no escape from the conclusion that Allen's bequest under Part I of his will constitutes a nondeductible terminable interest.

Affirmed.

---

8. It has been suggested that since Kathleen would have taken under either Part I or Part II of Allen's will, at least the lesser amount which she stood to inherit under Part II should qualify for the marital deduction, but, the fact is that Kathleen chose to take under Part I and viewed at the moment of Allen's death that interest was terminable in its entirety.

9. Treas.Reg. § 20–2056(e)–2(c) provides:
This paragraph contains rules applicable if the surviving spouse may elect between a property interest offered to her under the decedent's will or other instrument and a property interest to which she is otherwise entitled (such as dower, a right in the decedent's estate, or her interest under community property laws) of which ad-

verse disposition was attempted by the decedent under the will or other instrument. If the surviving spouse elects to take against the will or other instrument, then the property interests offered thereunder are not considered as having "passed from the decedent to his surviving spouse" and the dower or other property interest retained by her is considered as having so passed. * * * If the surviving spouse elects to take under the will or other instrument, then the dower or other property interest relinquished by her is not considered as having "passed from the decedent to his surviving spouse" * * * and the interest taken under the will or other instrument is considered as having so passed. * * *