**ESTATE of Francis S. TILYOU by Florence J. Tilyou, Executrix, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 16, Docket 72–1079.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1972.

Decided Dec. 8, 1972.

694

Daniel Flynn, New York City, for appellant.

Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

MOORE, Circuit Judge:

This appeal is from a decision of the Tax Court [1] sustaining the denial by the Commissioner of Internal Revenue of a marital deduction in the tax return of the Estate of Francis S. Tilyou.

The question raised by this case concerns Section 2056(a) of the Internal Revenue Code of 1954, which provides that the value of a taxable estate is determined by subtracting from the gross estate

> the value of any interest in property which passes or has passed from the decedent to his [2] surviving spouse.

· · · · · ·

Subsection (b) of this section limits the marital deduction permissible under Section 2056(a) by eliminating from the deduction any "terminable interest" in property which passes to the surviving spouse.[3] The Commissioner disallowed a

---

1. Judge Quealy's opinion is reported at 56 T.C. 1362 (1971).

2. This section of the Internal Revenue Code was obviously drafted before Congress became attuned to the subtleties of subconscious male chauvinist attitudes. Actuarially, it is probably slightly more correct to assume that the wife, rather than the husband, will be the surviving spouse. On the other hand, it is clear that, even though the Code refers to "his surviving spouse", the marital deduction applies as well when the husband seeks "surviving spouse" status under this section. 1 U.S.C. § 1. *See e. g.*, Calif. Trust

Co. v. Riddell, 136 F.Supp. 7 (S.D.Cal. 1955).

3. § 2056(b) Limitation in the case of life estate or other terminable interest.

(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in mon-

marital deduction for the personalty which passed under the residuary clause of the will of Francis S. Tilyou because he found that that will created a terminable interest in the residuary estate.[4] This created a tax deficiency in the amount of $112,600.21. The Tax Court upheld the Commissioner's decision. We reverse.

## I.

Francis S. Tilyou left his entire estate to his wife. His will also provided:

In the event, however, of the death of my wife herein named before me, or *before she shall have become entitled to any part or share of my residuary estate*, then my said residuary estate shall be paid to my children. . . . (emphasis added)

The Commissioner here argues that this "entitled to" clause meant that if Mrs. Francis S. Tilyou had died before distribution, the residuary estate would have passed to the children of Francis S. Tilyou. He, therefore, decided that her interest in the estate was a terminable one under Section 2056(b) and disallowed a marital deduction as to the personalty included in the residuary estate.

■ Congress passed Section 2056 to "equalize the effect of the estate taxes in community property and common-law jurisdictions." United States v. Stapf, 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963); Jackson v. United States, 376 U.S. 503, 510, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964). It was the intent of Congress in enacting this section to

afford a *liberal* estate-splitting possibility to married couples, where the deductible half of the decedent's estate would ultimately—if not consumed—be taxable in the estate of the survivor, . . . Plainly such a provision should not be construed so as to impose unwarranted restrictions upon the availability of the deduction. Northeastern Pennsylvania National Bank & Trust Co. v. United States, 387 U.S. 213, 221, 87 S.Ct. 1573, 1578, 18 L.Ed.2d 726 (1967) (emphasis added).

While this liberal estate-splitting possibility must not be unreasonably withheld, this Court has previously noted that the limitations imposed on this deduction by Section 2056 itself must be carefully observed. Referring specifically to the terminable interest restriction of Section 2056(b), we have held that to insure a marital deduction the "draftsmen of testamentary instruments . . . [must] be meticulous in adhering to the formal requirements of section 2056." Allen v. United States, 359 F.2d 151, 153 (2d Cir. 1966), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed. 2d 67 (1966). *See also* Jackson v. Unit-

---

ey or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

 (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with the respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

 (C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

\*     \*     \*     \*     \*     \*

4. All of Francis S. Tilyou's property passed under the residuary clause except that required to pay his "just debts, funeral and testamentary expenses." The Commissioner allowed the marital deduction as to the real property included in the residuary estate since, under the law of the appropriate state, New York, title to real property passes at the instant of death. Barber v. Terry, 224 N.Y. 334, 339, 120 N.E. 732, 733 (1918) ; Horton v. Commissioner, 388 F.2d 51 (2d Cir. 1967).

ed States, *supra*, 376 U.S. at 511, 84 S. Ct. 869. The necessity for the terminable interest rule has been stated in *Allen* as:

> [T]he Congressional purpose in disqualifying terminable bequests was . . . to prevent the wholesale evasion of estate taxes which the skillful employment of terminable interests could easily have achieved. *Allen, supra*, 359 F.2d at 154.

## II.

We must now consider whether the "entitled to" clause in the will of Francis S. Tilyou created a terminable interest within the meaning of 2056(b), so that the marital deduction for the personalty which passed in the residuary estate of this will should be disallowed.

New York law, in theory, controls the determination of this question, Commissioner v. Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *see* Estate of Horton v. Commissioner, 388 F.2d 51 (2d Cir. 1967), but from the briefs of the parties and our own research we are satisfied that there are no New York cases which have construed a similar clause. The estate concedes that if the will had read "if she dies before she shall have become *entitled to distribution* of the residuary estate" or "before she shall have become *entitled to possession* of the residuary estate", rather than simply *"entitled to"*, this would have created a terminable interest which would have defeated the deduction sought here. Such terms have appeared in *Horton, supra*, In re Estate of Fried, 445 F.2d 979 (2d Cir. 1971),[5] and In re Herrmann's Estate, 193 Misc. 466, 82 N.Y.S.2d 888 (Surr.Ct.1948). In *Herrmann* the court considered a will containing the clause "[if she] shall die before she shall become entitled to the possession of [the residual estate]"[6] and noted that the

legatees would not be entitled to possession until the administration of the estate had proceeded to such a point that the executors could make distribution. *Id.* at 891. This will thus created an interest in the surviving party which clearly would have been terminated by her death before actual distribution of the estate. This has also been held true for a will providing for an alternative distribution if the widow died " 'before said residuary estate shall have been distributed to her.' " *Horton, supra*, 388 F.2d at 53.

■ By long settled law in New York a legatee takes only an equitable title to personalty passing under the residuary clause of a will; it is the executor who takes legal title. In re Starbuck, 251 N.Y. 439, 443, 167 N.E. 580 (1929). The legatee does not gain full legal title to this property until all estate creditors have been satisfied. Blood v. Kane, 130 N.Y. 514, 517, 29 N.E. 994 (1892). This is true even where, as here, there is a sole legatee who is also the sole executor. *Id.*

■ Where a New York will contains either an "entitled to possession" or an "entitled to distribution" clause, that will creates a terminable interest which falls squarely within Section 2056(b). Personal property passing under such a clause is, therefore, not to be considered when computing the marital deduction available to the estate created by such a will.

By applying the rule applicable to "entitled to possession" and "entitled to distribution" clauses to the "entitled to" clause in the Francis S. Tilyou will, the Commissioner determined that this clause created a terminable interest in the residuary estate and therefore disallowed the deduction.

While there are no New York cases interpreting a simple "entitled to" clause, the estate has cited Brewster v.

---

5. The precise language in *Fried* was "in the event that my said beloved wife survives me but dies before the probate of

this [will]." 445 F.2d at 981. See the discussion of this clause *infra*.

6. 82 N.Y.S.2d at 890.

Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930) to support its argument that this clause means only "entitled as of right" to the property included in the residuary estate.

Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. [citation omitted] But *immediately upon the death of the owner there vests in each of them the right to his distributive share* of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. . . . *The decree of distribution confers no new right*; it merely identifies the property remaining, evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of death. [citations omitted.]

Petitioner's right later to have his share of the residue vested immediately upon testator's death. 280 U.S. at 334, 50 S.Ct. at 116 (emphasis added)

The opinion of this Circuit in *Brewster*, which the Supreme Court affirmed, includes even more direct language in support of the estate's argument. After noting that legal title to personalty vests in the personal representative of the deceased as of the date of his death, the opinion continued:

But a legatee under a will . . . acquires that *to which he is entitled* at the instant of the testator's death. Brewster v. Gage, 30 F.2d 604, 605 (2nd Cir., 1929) (emphasis added)

These Brewster opinions can be read to support the estate's argument here, although the legal question actually involved in *Brewster* was the federal income tax law question of when stock received under a will is "acquired" for the purpose of computing gain or loss on the disposition of that stock. While this case did not determine whether an "enti-

tled to" clause creates a "terminable interest" in a New York will, it is indicative that equitable title, at least, vested as of the date of death. As was said in Cooper v. Cooper, L.R. 6 Ch. 53, cited in Blood v. Kane, *supra*, 130 N.Y. at 519, 29 N.E. 994:

The rule of the Statute of Distributions, which requires the conversion of the intestate's estate into money, is introduced simply for the benefit of creditors, and the facility of division among the next of kin. *But, as regards the substantial title to property, the right of the next of kin (subject only to the claims of creditors) is complete.* (emphasis added)

■ In addition to this argument, however, the estate also presented extrinsic evidence to the Tax Court as to the origin of the "entitled to" clause. In the construction of wills in New York it is the

function of the court to ascertain the intent and purpose of the testator as expressed in his will and to give effect to that intent and purpose insofar as it is not contrary to our laws and public policy. In re Herrmann's Estate, *supra* 82 N.Y.S.2d at 891

To interpret . . . [the testator's] intent we may consider the circumstances known to him when the will was made. . . . In re Neil, 238 N.Y. 138, 140, 144 N.E. 481 (1924)

Since New York law does not tell us whether an "entitled to" clause creates a terminable interest, we believe it appropriate to consider the circumstances which were known to Francis S. Tilyou when he made his will so that we may determine exactly what he did intend by including this clause.

### III.

The circumstances surrounding the inclusion of the "entitled to" clause in Francis Tilyou's will are complex, but an understanding of them is essential to understanding his intent.

Decedent's father, George C. Tilyou, died in 1914. He was survived by his wife, Mary, and their five children, one of whom was the decedent, Francis S. Tilyou. George Tilyou's will provided that all of his property [7] was to be placed in trust for his children to share equally, but he further provided that his wife was to have the income from this trust during her lifetime.

In June, 1944, Edward F. Tilyou, eldest of the five children of George and Mary Tilyou, died. Since he was a bachelor, Edward's will provided that his entire estate was to go to his two brothers and two sisters. His will further provided:

> In the event, however, of the death of a sister or brother herein named *before he or she shall have become entitled to any part or share of my residuary estate*, such share of my residuary estate shall be paid to the issue of said deceased brother or sister. (emphasis added)

The circumstances surrounding the drafting of *this* "entitled to" clause shed important light on the intentions of *Francis* when he drew up his own will the following year and included therein an identical "entitled to" clause.[8] When Edward's will was drafted, his mother was alive and healthy and enjoying the income from the trust created by her husband's will. At that time Edward did not know whether his one-fifth interest in his father's estate was a vested or a contingent interest.[9] It was Edward's belief that if the interest were deemed contingent then it would be defeated by his death and the shares of his surviving brothers and sisters would be proportionately increased.

There was, however, concern over how Edward's share of his father's estate would be distributed if it were found to be vested. Edward desired that upon his death his share should be divided equally among his brothers and sisters or their children. To provide for the possibility that one or more of his brothers or sisters might predecease him, Edward included the "entitled to" clause in his will to make it perfectly clear that he wished the children of that brother or sister to take their parent's share, if that parent died before him. Edward intended by this clause to preclude any possibility that his estate might pass by intestacy to his mother if (1) his share in his father's estate was deemed vested, (2) one or more of his brothers or sisters predeceased him, and (3) his will was construed not to cover such a possibility.[10] Whether or not Edward was correct in believing that the "entitled to" clause was necessary to prevent intestacy, he clearly did not intend this clause to create a terminable interest in his brothers and sisters.

In 1945, the year after Edward's will was prepared, Francis S. Tilyou asked the attorney who had drafted Edward's will to draw up his own will. Since at that time there was still uncertainty as to whether the interests of the children of George C. Tilyou were vested or contingent, the attorney mechanically included in Francis' will the very same "entitled to" clause he had originally drafted for Edward. The will involved in this suit is this same 1945 will, reexe-

---

7. The principal property in this estate was all of the stock of the Tilyou Realty Company which owned real estate at the amusement parks at Coney Island in New York City and Atlantic City, New Jersey.

8. These clauses are identical except that Francis' will refers to his wife and children where Edward's refers to his brothers and sisters.

9. In 1946 the Internal Revenue Service determined that these interests were vested.

10. The attorney who drafted Edward's will testified simply that the clause was intended to prevent intestacy. One way this might have arisen is that since his will divided his estate into quarters for equal distribution among his four brothers and sisters, Edward may have believed that if these four were not still alive when he died, his will might have been interpreted not to apply since four quarter shares could not be "equally divided" among three surviving family members.

cuted in 1953 to effect a change of executors.[11]

· This evidence as to the origin of the disputed clause was introduced through the testimony of the attorney who had drafted these wills. The Commissioner has conceded that when Francis S. Tilyou's will was originally executed the children were still uncertain whether their interests in their father's estate were vested or contingent. And the Commissioner does not effectively dispute that it was this concern that prompted the attorney (perhaps unnecessarily) to include the "entitled to" clause in this will.

Given the above circumstances, we can be reasonably certain that by including this clause in his will, Francis S. Tilyou did not *intend* to create a "terminable interest" which would defeat a marital deduction under Section 2056. Furthermore, by the time Francis died in 1964 the circumstances, which were originally deemed to require the "entitled to" clause, had long since changed. The children's interests had been deemed vested and the mother, Mary Tilyou, income beneficiary of the trust created in her husband's will, had died in 1954. The trust property had thus already been distributed when Francis died. It should also be mentioned that there was no marital deduction in 1945 when Francis' will was drafted and, thus, he had no reason to be concerned over whether any language in the will might be construed to create a terminable interest.[12] Since the circumstances which Francis *intended* to cover by including the "entitled to" clause in his will had changed, so far as his *intent* was concerned, that clause had been rendered mere surplusage by 1964.

▮ As already established there are no cases interpreting the effect of

an "entitled to" clause in a New York will. Given the uncertain impact of this phrase in New York law, the receptiveness of New York courts to extrinsic evidence to determine the circumstances known to the testator when he drew his will, and the substantially uncontroverted explanation of the reasons for including this clause in the will (which explanation clearly established that Francis S. Tilyou did not *intend* to create a terminable interest in his widow), we believe that the clause should not be read to create a terminable interest in this will.

IV.

In its opinion the Tax Court found the instant case

. . . similar to that of Estate of Harry Fried v. Commissioner . . . Although the case at bar involves a provision worded slightly different [*sic*] than that of *Fried*, it is clear that the result of the language in either case is identical. 56 T.C. at 1370 (1971)

We disagree. In contrast to the simple "entitled to" clause in the Francis S. Tilyou will, the *Fried* will specifically required that the wife survive until probate.[13] While the *Fried* will thus obviously indicates an intent to create an interest in the surviving spouse which would be terminated by her death before · probate, there is no such clear indication of intention in the Tilyou will.

Since the law of New York is not clear as to the meaning of the questioned clause, since the origin of that clause had nothing to do with creating a terminable interest, and since the Commissioner, in effect, concedes that this is so, we conclude that petitioner is entitled to a marital deduction as to the personalty transferred under the residuary clause of the will of Francis S. Tilyou.

11. Mary Tilyou, Francis' mother, was still alive and enjoying the income from her husband's estate in 1953 when the executor was changed.

12. The marital deduction was introduced in 1948 as § 812(e) of the Internal Reve-

nue Code of 1939 by the Revenue Act of 1948, § 361, ch. 168, 62 Stat. 117.

13. The language of the will involved in *Fried* is quoted in n. 5 *supra*.