**ESTATE of Ludwig NEUGASS, Deceased, Herbert Marx, Jacques Coe, Jr., and Chase Manhattan Bank, N. A., Executors, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 105, Docket 76–4112.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1977.

Decided May 9, 1977.

Jacob Imberman, New York City (Proskauer, Rose, Goetz & Mendelsohn, Alan S. Rosenberg, Lawrence J. Rothenberg and Benjamin L. Greenberger, New York City, on the brief), for petitioners-appellants.

John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., on the brief), for appellee.

Before ANDERSON, OAKES and GUR-FEIN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This is an appeal from a decision, filed October 29, 1975, by the Tax Court (D.C., 65 T.C. 188 (1975)), affirming the disallowance of a marital deduction by the Commissioner of Internal Revenue and determining a deficiency in federal estate taxes due from the estate of Ludwig Neugass, deceased, in the amount of $109,079.42.

Mr. Neugass died February 24, 1969 leaving a will which was admitted to probate on April 23, 1969 in New York Surrogate's Court. On July 2, 1969, pursuant to Article FIFTH [1] of the will, his widow executed and filed in Surrogate's Court an instrument [2] pursuant to the terms of which she elected to take absolute ownership over certain specified items. Remaining items under Article FIFTH, over which Mrs. Neugass did not elect to exercise the option for absolute ownership, then devolved to Nancy Carouso, whose life estate in them commenced by virtue of Mrs. Neugass' partial renunciation. Mrs. Carouso thereafter executed an instrument, pursuant to Article FIFTH, whereby she elected to take absolute ownership of the remaining works of art.

Ludwig Neugass' executors claimed a marital deduction in the amount of $682,-605.12 *including* $383,495.00 for the value of the works of art of which decedent's widow elected to take absolute ownership. From this amount the Commissioner disallowed $337,329.88 on the ground that Mrs. Neugass' interest in the art works was a "terminable interest" under 26 U.S.C. § 2056(b)(1) [3] and therefore not an allowable marital deduction.

---

1. Article FIFTH reads, in pertinent part, as follows:

   "FIFTH: I direct that if my wife, CAROLYN NEUGASS, survives me, she shall have the life use of all my paintings and other works of art (hereinafter called my 'collection'), without bond, and that upon her death my daughter, NANCY CAROUSO, if she is then living, shall have the life use of said collection, without bond. Upon the death of the survivor of my wife and my daughter, said collection shall become the absolute property of the LUDWIG NEUGASS FOUNDATION.

   . . .

   \* \* \* \* \* \*

   With respect to any item in said collection:

   (a) Within six months after the date of my death, either my wife or my daughter may renounce her life use thereof and, if both of them so renounce, the item shall become the absolute property of the FOUNDATION.

   (b) *Within six months after the date of my death, either my wife or my daughter may elect to take absolute ownership of any item, whereupon said item shall become the absolute property of my wife or my daughter;* in the case of my daughter, such election shall take effect if and only when her life use has begun.

   (c) At any time after said six months period either my wife or my daughter may terminate her life use of any item and thus accelerate with respect to said item the provisions otherwise effective upon her death." (Emphasis added.)

2. The instrument read as follows:

   "WHEREAS, under the terms of Article FIFTH of the Will of LUDWIG NEUGASS, deceased, said decedent bequeathed to his wife, CAROLYN NEUGASS, the life use of all of his paintings and other works of art; and

   WHEREAS, under the terms of Article FIFTH (b) of said Will, his wife may within six months after the date of said decedent's death, elect to take absolute ownership of any item of his paintings and other works of art, whereupon said item shall become her absolute property.

   NOW, THEREFORE, the undersigned, does hereby elect to take absolute ownership of the items of paintings and other works of art of the decedent listed on Schedule A annexed hereto.

   Dated: July 2, 1969
   
   [/s/] Carolyn Neugass"

3. 26 U.S.C. § 2056 provides in pertinent part:

   (a) *Allowance of marital deduction.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

   (b) *Limitation in the case of life estate or other terminable interest.*—

   (1) *General rule.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the

The appellants petitioned for a redetermination of the deficiency, alleging that the value of the art collection qualified for the marital deduction, inasmuch as it passed to the surviving spouse in fee, pursuant to the "election" provision under Article FIFTH. The appellants argued here and in the Tax Court that such an election of a fee interest within a period of six months after the testator's death did not constitute an "event or contingency" under 26 U.S.C. § 2056(b)(1) sufficient to make the value of the bequest ineligible for the marital deduction. The Commissioner's position at the trial was that the correct reading of Article FIFTH was not that of an election between a life estate, fee, or any other interest in the collection, but a straightforward gift of a life estate in the works of art, vesting at the moment of the testator's death, together with a general power of appointment over the whole, exercisable within six months after that date. The election, therefore, was not available throughout Mrs. Neugass' lifetime and as a result the bequest was subject to contingencies or events pursuant to 26 U.S.C. § 2056(b)(1), and classified as a terminable interest not qualifying for the marital deduction.

At trial, the executors presented the testimony of Mr. Neugass' attorneys in order to explain the wording and structure of Article FIFTH and Mr. Neugass' expectations as to whether the will provided his spouse with the full benefits of the marital deduction. On the first issue, the uncontroverted testimony presented by the appellants showed that Article FIFTH was drafted with the intent of providing Mrs. Neugass with "as much flexibility with respect to this art collection as possible." The testator was concerned with his wife's frail health and the possibility that estate taxes on the art collection could deplete other assets in the estate. One of Mr. Neugass' attorneys testified that to achieve this flexibility, the will enabled the surviving spouse to keep the collection for herself or give it to her daughter; if neither one wanted it, it would go to a charitable foundation free of taxes. In short, Article FIFTH constituted an alternative and open-ended bequest to Mrs. Neugass, provided the choice was made within six months of the testator's death.

The attorney further explained that the reason why Mrs. Neugass was not granted an outright bequest of the collection with a right to renounce all or part of it (an arrangement which presumably would have not caused any federal estate tax problems had she merely kept the entire collection) was that there existed, at the time of drafting the will, legal uncertainty under New York law as to the validity of a partial testamentary renunciation from a greater to a lesser estate (i. e. ownership in fee to a life estate). This uncertainty was primarily attributable to *Matter of Waring*, 293 N.Y. 186, 189, 56 N.E.2d 543 (1944), where the New York Court of Appeals failed to pass on the issue. As a result, Article FIFTH was drafted to provide the converse of a testamentary renunciation from a fee to a life estate; a life estate which could be renounced or, more accurately, enlarged to a fee at Mrs. Neugass' election after her husband's death. The provision for a six months period within which Mrs. Neugass could make an election was used in the Article because it was the same time-period as that used in N.Y.E.P.T.L. § 4–1.3 (McKinney), which allowed total or partial renunciation of intestate shares within six months of the issuance of letters of administration, and in 26 U.S.C. § 2056(b)(3),

---

surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

(3) *Interest of spouse conditional on survival for limited period.*—For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—

(A) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

(B) such termination or failure does not in fact occur."

which permitted the conditioning of an interest passing to a surviving spouse upon the six months survival of that spouse.[4] It was only in 1971, two years after Mr. Neugass' death, that New York approved N.Y. E.P.T.L. § 3–3.10 (McKinney), explicitly sanctioning partial or complete renunciations by testamentary beneficiaries within one year after the admission of a will to probate.

On the second issue concerning Mr. Neugass' tax intentions and expectations in executing the will as drafted, one of the attorneys testified that he had advised Mr. Neugass that the will had been drafted "with the intention of minimizing the taxes to give the widow the full marital deduction . . . ," and that he had explicitly told Mr. Neugass that, in his opinion, the will carried out the testator's objectives and qualified for the marital deduction. There was also testimony that Mr. Neugass was "extremely tax conscious" and had had "a considerable amount of tax-oriented planning" done before the drafting of his 1967 will.

In spite of this uncontroverted testimony, the Tax Court agreed with the Commissioner that Article FIFTH created a grant of successive life estates to Mrs. Neugass and her daughter, effective upon Mr. Neugass' death, along with a general power of appointment in the surviving spouse exercisable within six months. 65 T.C. at 193. The court was persuaded that Article FIFTH, as so interpreted, constituted a terminable interest because 26 U.S.C. § 2056(b)(5) only exempts, from the terminable interest rule, a life estate with a general power of appointment in the surviving spouse where the power "is exercisable by such spouse alone *and in all events.*" (Emphasis added.) It concluded that inasmuch as Mrs. Neugass' " 'power' was required to be exercised within a period of 6 months after decedent's death . . . ," it was not, therefore, exercisable "in all events." 65 T.C. at 194.

The Tax Court went on to distinguish, on its facts, *Estate of Mackie,* 64 T.C. 308 (1975), *affirmed,* 545 F.2d 883 (4th Cir.

1976), in which the surviving spouse was allowed by the will to select from the testator's estate properties up to the value of the full marital deduction with, however, the right to accept the devise or "appointment" in whole or in part. The surviving spouse's election was required to be effected by a statement in writing delivered to the executrix within four months of the testator's death. The Commissioner there also argued that the bequest was conditional and a terminable interest under 26 U.S.C. § 2056(b), based on the contingencies that Mrs. Mackie might not accept, in which case the properties would have gone into a residuary trust. 64 T.C. 310. The Tax Court ruled that "[t]he mere presence of a right of election against a will is not a disqualification so long as the interest which passes to the surviving spouse is nonterminable." 64 T.C. at 311 (citations omitted). Because the will essentially bequeathed nothing to Mrs. Mackie until she did elect, she was substantively in the same position as a disinherited surviving spouse, given a statutory right of election under state law, whose elective share would be subject to the marital deduction if it constituted a non-terminable interest, *Dougherty v. United States,* 292 F.2d 331, 337 (6th Cir. 1961); *United States v. Crosby,* 257 F.2d 515 (5th Cir. 1958). The difference between a statute-created right of election and an election granted in a will was perceived by the court as "a difference without a distinction." 64 T.C. at 312. In the instant case, the Tax Court ruled that Mrs. Neugass was "not faced with a choice between alternatives, as was Mrs. Mackie." 65 T.C. at 195.

On this appeal, appellants seek a determination by this court that the interest acquired by Mrs. Neugass pursuant to Article FIFTH was an alternative or elective bequest and, as such was a non-terminable interest which qualified for the marital deduction. The Commissioner, however, argues that the Tax Court was correct in interpreting the will as a grant of an immediate life interest in the art collection to

4. *Id.*

Mrs. Neugass, subject to a terminable and non-deductible general power of appointment in herself for a six month period. He further asserts that, even if this court were to disagree with the Tax Court's holding, *Mackie* is contrary to controlling legal principles and should not be followed.

■ As to the preliminary question of this court's scope of review, it is clear that we may re-examine the Tax Court's reading of Article FIFTH of the Neugass will, because it is essentially "a legal interpretation, not a finding of fact." *Estate of Mittleman v. Commissioner,* 173 U.S.App. D.C. 26, 522 F.2d 132, 141, n.63 (1975); *Commissioner v. Buck,* 120 F.2d 775, 779 (2d Cir. 1941). The rule that findings of fact by the Tax Court should not be set aside unless clearly erroneous, *Commissioner v. Duberstein,* 363 U.S. 278, 290–91, n.13, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), does not, therefore, apply, *Estate of Mittleman v. Commissioner, supra,* 522 F.2d at 141, n.63; and we do disagree with the Tax Court's holding.

■ Clause (b) of Article FIFTH which provides for the six-month election by Mrs. Neugass, injects a sufficiently strong element of uncertainty into the instrument to warrant a resort to extrinsic evidence to determine testamentary intent. This court only recently ruled in *Estate of Trunk v. Commissioner,* 550 F.2d 81 (2d Cir. 1977), that it was error for the Tax Court to have rejected the offered testimony of the drafter of a will to prove that one of its provisions granted a widow a non-terminable bequest of $200,000. New York law also supports the proposition that extrinsic evidence as to a testator's intention and state of mind should be considered where ambiguities are present, *In re Flyer,* 23 N.Y.2d 579, 584, 297 N.Y.S.2d 956, 245 N.E.2d 718 (1969); *Matter of Fabbri,* 2 N.Y.2d 236, 240, 159 N.Y.S.2d 184, 140 N.E.2d 269 (1957).

■ While the Tax Court in the instant case admitted the testimony of Mr. Neugass' attorneys, its opinion failed to consider it, contrary to our holding in *Estate of Tilyou v. Commissioner,* 470 F.2d 693, 697

(2d Cir. 1972). The uncontroverted evidence here adduced, demonstrates that Mr. Neugass' objective in planning his estate was to provide his widow with as much flexibility as possible with respect to the disposal of his art collection and at the same time provide her with as full a marital deduction as the law allowed. The Tax Court's characterization of Article FIFTH (b)'s election provision as a power of appointment is, as appellants point out, belied by Article SIXTH'S provisions for a residuary trust with explicit appointment powers in Mrs. Neugass and her daughter, Nancy Carouso. Those provisions furnish further evidence that Mr. Neugass and his attorneys knew full well how to create powers of appointment if they so desired. The indication is then clear that Article FIFTH did not contain, explicitly or impliedly, a power of appointment, but instead an alternative bequest.

In *Estate of Tilyou v. Commissioner,* 470 F.2d 693 (2d Cir. 1972), a case similar to the present one, the Commissioner challenged a clause in a testator's will employing the words "entitled to" as creating a possible contingency or event, sufficient to make the interest created terminable and non-deductible. In allowing the marital deduction, this court pointed to the Supreme Court's view in *Northeastern Pennsylvania National Bank & Trust Co. v. United States,* 387 U.S. 213, 87 S.Ct. 1573, 18 L.Ed. 726 (1967), that in approving 26 U.S.C. § 2056 and the marital deduction, Congress intended to ". . . afford a *liberal* 'estate-splitting' possibility to married couples, where the deductible half of the decedent's estate would ultimately—if not consumed—be taxable in the estate of the survivor. . . . Plainly such a provision should not be construed so as to impose unwarranted restrictions upon the availability of the deduction." 387 U.S. at 221, 87 S.Ct. at 1578. (Emphasis added.) After a review of the factual circumstances surrounding the drafting of the will and the available legal precedent as to effect of the "entitled to" clause, the *Tilyou* court found that the testator in that case had "not *intend[ed]* to create a 'terminable interest'

which would defeat a marital deduction under Section 2056." 470 F.2d at 699. (Emphasis in original.) In the instant case, the evidence is even stronger than in *Tilyou* that Mr. Neugass intended his widow to have the full benefit of the marital deduction.

Although the Commissioner conceded at oral argument that the present case is indistinguishable from *Estate of Mackie v. Commissioner, supra,* given a finding of an elective bequest in each, he contends that *Mackie* and this case are contrary to our opinion in *Allen v. United States,* 359 F.2d 151 (2d Cir.), *cert. denied,* 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), and the "controlling federal legal principles." *Allen,* however, is distinguishable from both because it involved the disallowance of a marital deduction in a bequest which gave Mrs. Allen the choice either: (1) to execute a written contract to make a will leaving to her husband's four children, in equal shares, not only the estate thus bequeathed to her by the decedent but also some of her own separate property, in which event she would receive the decedent's entire estate, provided the executed contract met with the approval of the Surrogate's Court; or (2) in the alternative, accept her statutory share. The bequest was, therefore, both conditioned and limited. Mrs. Allen executed the contract which was approved by and filed with the Surrogate's Court and subsequently claimed the maximum marital deduction. But the Commissioner disallowed it on the ground that Mrs. Allen's interest was a non-qualifying terminable interest. This court affirmed the dismissal of the complaint which sought a refund of the tax paid upon the disallowance of the marital deduction. *See also, Estate of Ray,* 54 T.C. 1170 (1970).

The *Allen* case, however, significantly pointed out that

"[w]hile the terminable interest rule is, indeed, a thicket, the Congressional purpose in disqualifying terminable bequests was certainly not to elevate form over substance. It was, instead, to prevent the wholesale evasion of estate taxes which the skilful employment of termina-

ble interests could have easily achieved." 359 F.2d at 153–54.

This court then went on to define a terminable interest as

"one which possesses the three characteristics found in sections 2056(b)(1) (A) and (B). *First,* it must be an interest in property which will terminate upon the occurrence or non-occurrence of an event or upon the lapse of time. *Second,* another interest in the *same* property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. And *third,* such other person must be able to possess or enjoy a part of such property upon the termination of the spouse's interest. With certain exceptions not relevant to this case, the interest bequeathed to a spouse qualifies for the marital deduction *unless all three* of these characteristics are present." 359 F.2d at 154. (Footnote omitted and emphasis supplied.)

The decedent's will, at the moment of his death, gave Mrs. Neugass the choice between a life use of the "collection," with certain gifts over to designated persons, on the one hand, or the vested indefeasible interests of absolute ownership of any or all of the items she selected, on the other hand. She chose to take the latter, *i. e.* complete ownership of the bulk of the "collection," which thereby became subject to the marital exemption for estate tax purposes for the reasons so cogently stated in the opinion of the Tax Court by Tannenwald, *Judge,* in *Mackie,* 64 T.C. 308 (1975), affirmed by the Fourth Circuit.

In considering, therefore, the Commissioner's claim in the present case, we are of the opinion that Mrs. Neugass had, under the provisions of the decedent's will, a mere election between alternatives which she exercised to take an unconditional absolute ownership, which is clearly non-terminable. Moreover, the interest she acquired does not come within this court's definition of a terminable interest because there was no other "interest in the same property [that] must pass or have passed to someone other than

the spouse from the decedent for less than an adequate consideration." In other words the second of the three cardinal elements of a terminable interest is not fulfilled in this case.

The undergirding purpose of the "terminable interest" concept in the tax statute provision is to "avoid the wholesale evasion of estate taxes," *Allen v. United States, supra,* 359 F.2d at 154. But there is nothing whatever about the decedent's testamentary provisions for Mrs. Neugass which were designed to or tended in any way to evade estate taxes. It is clear that classifying this elective bequest as a terminable interest and excluding it from the marital deduction would go beyond lawful "protection of the currency" and the intent of Congress and would result in double taxation of a non-terminable interest for no apparent reason.[5] The Commission's present position would result in the art collection being taxed in both Mr. and Mrs. Neugass' estates brought about solely by the arbitrary denial of the marital deduction. As it stands now, those items of the art collection elected by Mrs. Neugass and remaining in her estate at death will be subject to taxes. There is, in short, no "skillful employment of terminable interests" to avoid estate taxes here, because Mrs. Neugass' election did not result in the passing of an untaxed terminable interest from husband to wife.

The Commissioner urges this court to reject the view adopted by the Tax Court in *Mackie,* and affirmed by the Fourth Circuit, that there is no substantial difference between an elective testamentary bequest of a non-terminable interest that relates back to the testator's death, and a widow's elec-

tion against a will pursuant to state statutes, which qualifies for the marital deduction so long as the interest actually passing to the spouse is non-terminable. *See, i. e., Dougherty v. United States,* 292 F.2d 331, 337 (6th Cir. 1961). The statutory policy governing the disposition of the "elective share" cases is applicable to the testamentary election situation as presented here and compels a similar result.

Reversed and remanded.

---

5. *Jackson v. United States,* 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964), on which the Commissioner places great reliance, does not bear on the case before us. The question in *Jackson* was whether the grant of a California widow's allowance by a state court qualified for the marital deduction. Because, pursuant to state law, the allowance was not a "vested right and nothing accrues before the order granting it," as well as the fact that the widow would lose her allowance if she died or remarried prior to the court's grant, 376 U.S. at 506,

84 S.Ct. at 871, the Court affirmed the denial of the marital deduction. In the present case, while New York law was not crystal clear on the subject at the time of the testator's death, the authorities were sufficiently persuasive to establish that the election pursuant to Article FIFTH of Mr. Neugass' will was valid under New York law, related back to the testator's death and was not otherwise subject to any of the contingencies, in kind and number, which afflicted the grant of a widow's allowance in *Jackson.*