Irving H. Saypol, J.
This application (Civ. Prac. Act, art. 79) is granted and the account of the trustee is settled and allowed. The indicated balance of commissions for the trustee is approved for payment and the amounts requested by counsel for their fees and disbursements shown in the affidavit of Edmund M. Beeeroft, sworn to May 21, 1958, are likewise approved, there being no objection.
Various questions are presented for judicial construction. The trust indenture was executed by the settlor in New York on March 31,1922. In it, she is described as a resident of Honolulu. *1041 The first question is what law controls the trust. The trustee says it is the law of New York. In order to determine where the administration of the trust is located, consideration is given to the provisions of the instrument, the residence of the trustees, the residence of the beneficiaries, the location of the property, the place where the business of the trust is to be carried on. (19 Col. L. Rev. 486, n. Cook.) “ Thus, where the actual and business situs of the trust, intent of the settlor that his domiciliary law shall not be applied to test its validity and administration, and domicile of the trustee coincide, the law of the place of location and administration of the trust controls, regardless of the place of execution”. (Shannon v. Irving Trust Co., 275 N. Y. 95, 102, citing Hutchinson v. Ross, 262 N. Y. 381.) The trustee and the res are here. Indicative of the settlor’s intent, one finds recurring mention in the indenture of the laws of New York as to investments and distribution of the corpus. The conclusion is that from the evident intention of the settlor within the four corners of the instrument and from the extrinsic facts and circumstances composing the most substantial connection with New York, the laws of New York govern the trust (cf. Matter of Pratt, 5 A D 2d 501, 505).
The remaining questions are as to the validity of amendments to the indenture in two successively executed instruments on December 21 and 27, 1935, 13 years after the creation of the trust. Particular note is made here that the petition has been supplemented by the affidavit of counsel, Edmund M. Beecroft, sworn to August 6,1958. The petition and exhibits read together with this affidavit, poses questions of the meaning of paragraph Twelfth of the indenture, here quoted in part: “ [settlor] may, from time to time, during the continuance of the trust, * * modify or alter this indenture and the trusts then existing, and the estates and interests in property hereby created to the extent of changing the beneficiaries thereof, as to either principal or income, in whole or in part, or time, terms and manner of payment thereof, save that [settlor] shall not have the right or power in any way to modify or alter the same so as to designate herself or her estate as the recipient of any part or portion of the principal or income thereof, (it being distinctly understood and agreed that the party of the first part reserves no power in any event to revoke the trust in favor of herself or her estate), * * * and no one shall have any rights, interest or estate under this indenture except subject to the proper modification or alteration thereof. ’ ’
The affected portions of the indenture for amendment are summarized now. Paragraph First grants a power of testamen *1042 tary appointment of corpus to the life tenant (settlor’s daughter), and if not exercised, then according to New York law to the latter’s heirs at law. Article Second is a tightly restricted, control of the trustee in respect to retention, administration and investment of the original property and securities composing the trust. Investment powers are subject to supervision successively by the settlor, then by her husband and finally by the life tenant. The latter is the survivor of the settlor and her husband. Only after the life tenant’s death, when the trust will end, is the trustee authorized to retain or to convert but in the latter event only in trust investments legal in New York. Paragraph Ninth, expressing the trustee’s powers of management of the trust property, incorporates the details of supervisory control referred to in paragraph Two, viz., successively by settlor, her husband and finally as now by daughter life tenant. Paragraph Thirteenth expresses precatorily in regard to the power of appointment stated in paragraph First that in testamentary exercise by the daughter, she should entrust the corpus for the benefit of the latter’s children.
The first amending instrument of December 21, 1935, wipes out the power of appointment in paragraph First of the indenture and disposes of the principal of the trust upon its termination to the daughter life tenant’s children and issue, determinable by New York law, and also strikes the precatory Thirteenth paragraph. Paragraphs Second and Ninth were to be changed to enlarge the trustee’s powers of management and investment of the corpus by striking the provisions which call for supervision today by the daughter life tenant. The stricture for retention of original property, intact, is modified to voice the settlor’s precatory views for retention in the trust of Eastman Kodak Company stock but nevertheless new power would be granted to convert into cash and securities legal for trust investment in New York. Paragraph Twelfth is changed to make the trust irrevocable and surrendering all power further to modify.
The second amending instrument of December 27, 1935, six days after the first, in its recitals makes reference to the indenture but is notably silent as to the recently executed amendatory instrument. This time in language identical to that in the first amendment, the same changes were to be made in paragraphs First and Thirteenth, termination of the power of appointment and paragraph Twelfth relinquishing all power further to modify. Notably too, nothing was now said regarding the original strict investment and management powers and their supervision.
*1043 The trustee, considering both amending instruments together, contends for the validity of all the changes or alternatively for the validity of those changes which voids the power of appointment, conveys the corpus and concludes any further modification. The first over-all contention is based on an interpretation of paragraph Twelfth as the retention of an all-extensive right to modify in any respect. For instance, it is argued that by the expression of specific power of modification as to beneficiary and interest in principal and income the settlor could substitute the life tenant, naming an adult. This, it is said, would thereby effectively constitute a revocation of the whole trust. This contention is obscure and inapposite. Likewise, the citation and quotation from Matter of Woodward (284 App. Div. 459) is irrelevant for there the settlor expressly stated the subjects and paragraphs in the trust which were reserved for modification. “ It is likewise well settled that if the settlor does not reserve the power to modify a trust his attempt to do so is ineffectual. (McKnigt v. Bank of New York & Trust Co., 254 N. Y. 417; 52 A. L. R. 686, Right to Amend Trust.) ” (Matter of Woodward, supra, p. 462.)
It is quite clear that the provision in both amending instruments which removes all right of future amendment is valid. The settlor here could always yield any powers which had been reserved. (Bogert, the Law of Trusts and Trustees, § 994; Commissioner of Internal Revenue v. Prouty, 115 F. 2d 331.) That provision in the first amending instrument concludes all subsequent change. The second amending instrument dated December 27,1935, is invalid.
The changes made in the trust in the first amending instrument of December 21, 1935, are only partially valid. The language employed by the settlor in paragraph Twelfth, despite the argument about its broad effect, is in fact limited to the specific subjects mentioned which, ejusdem generis, qualify the general language. The initial reservation to permit amendments affecting beneficiaries and their interests and furthermore the concluding language of the paragraph which subordinates the interests of the original beneficiary to any future action, demonstrates the limited extent of the original reservation — confined to beneficiaries and their interests. Contrastingly, there is nothing stated to suggest any intention of future departure from the expressly mandated requirements for maintaining corpus and for the supervision of the trustee’s administration of the estate in respect to corpus and future investments.
Articles First, Twelfth and Thirteenth of the indenture are held to have been validly amended by the instrument executed *1044 on December 21,1935. The changes with respect to paragraphs Second and Ninth are invalid and ineffective in view of the limited application of paragraph Twelfth, confined to beneficiaries and interests, so that the original provisions of paragraphs Second and Ninth continue to control as these were first written. The relinquishment of all future power of modification expressed on December 21,1935, is valid and thereby the second amending instrument of December 27, 1935, is invalid and a nullity.
Settle order.