ESTATE OF DEAN S. EDMONDS, DECEASED, BANK OF NEW YORK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10164–75.    Filed August 29, 1979.

*Lawrence T. Warble*, for the petitioner.

*L. William Fishman, Stanley J. Goldberg*, and *Michael A. Zimmerman*, for the respondent.

WILBUR, *Judge:* Respondent determined a deficiency of $826,270.87 in petitioner's estate tax. Concessions having been made by the parties, the issues remaining for decision are:

(1) Whether the value of the portion of the principal of an inter vivos trust created by an indenture dated March 25, 1960,

which is attributable to contributions by the decedent is includable in the decedent's gross estate;

(2) Whether the value of the portion of the principal of the aforementioned trust which is attributable to contributions by persons other than the decedent is includable in the decedent's gross estate;

(3) Whether the value of the principal of three inter vivos trusts created by indentures dated August 14, 1963, June 28, 1964, and June 29, 1964, which is attributable to contributions by persons other than the decedent is includable in the decedent's gross estate;

(4) Whether the value of the principal of four inter vivos trusts created by indentures dated December 14, 1955, December 14, 1955, November 22, 1957, and May 31, 1962, is includable in the decedent's gross estate.

(5) Whether the credit for tax on prior transfers is to be computed by utilizing the actuarial tables relating to the date of the transferor's death or those relating to the date of the decedent's death; and

(6) Whether the petitioner is entitled to a marital deduction for a $100,000 bequest to the decedent's surviving spouse.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Decedent Dean S. Edmonds died testate on September 18, 1972. At the time of his death, decedent was a resident of Fairfield, Conn. The Bank of New York, a corporation with its principal place of business in New York, N.Y., on the date the petition herein was filed, is the duly appointed and acting executor of the estate. Petitioner filed its Federal estate tax return with the Internal Revenue Service Center at Andover, Mass., on June 15, 1973.

By trust indenture dated March 25, 1960, decedent created a trust (hereinafter the family trust) naming the Empire Trust Co. (subsequently merged into the Bank of New York, hereinafter the bank) as trustee to pay fixed annuities to Claude A. Edmonds, Kate Tibbals, E. Quintard St. John, Mrs. H. Edmonds Noble, Mrs. Bayne Bateson, Elsie Searing, and Marie C. Moore.

The family trust indenture provides, in part, as follows:

## ARTICLE SECOND

However, anything hereinabove to the contrary, at any time after the date of the death of the last survivor of the said Mr. Claude A. Edmonds, the said Miss Kate Tibbals and the said Dr. E. Quintard St. John prior to the 31st day of December, 1974, Dean S. Edmonds, Jr., son of the Grantor, shall have the sole and uncontrolled discretion to terminate this Trust, such termination to be effected by an instrument in writing signed by the said Dean S. Edmonds, Jr., acknowledged before a notary public in any jurisdiction and filed with the Trustee hereunder.

Also, anything hereinabove to the contrary, after the date of the death of the last survivor of the said Mr. Claude A. Edmonds, the said Miss Kate Tibbals and the said Dr. E. Quintard St. John prior to the 31st day of December, 1974, the said Dean S. Edmonds, Jr. shall have the right and authority from time to time to direct (which direction shall be by an instrument in writing duly acknowledged before a notary public in any jurisdiction and filed with the Trustee hereunder) the Trustee to increase to any extent not in excess of 100 per cent of the amounts stated herein the future payments from the Trust Estate to any or all of the then living beneficiaries mentioned in Article First hereof, or to diminish to any extent the future payments to all of them, provided that any such diminution shall be in the same amount as to each of them or in the same percentage as to each of them, as the said Dean S. Edmonds, Jr. shall direct. * * *

## ARTICLE THIRD

The Trustee shall receive, hold and administer and dispose of as part of the Trust Estate created hereby and subject to all of the directions, powers, limitations and other provisions contained in this Indenture, any cash or any additional securities or other property of any kind satisfactory to it which the Grantor or any other person may hereafter transfer to the Trustee either by will or by deed or gift with instructions to add the same to the Trust Estate. Any reference made to the Trust Estate shall be deemed to include such cash or any additional securities or any other property so received by the Trustee from the Grantor or any other person.

If at any time during the continuance of the Trust hereby created, the net income received by the Trustee in any calendar quarter or calendar year shall be insufficient in amount to make in full the payments directed in Article First hereof, the Trustee shall in writing so inform the said Dean S. Edmonds, if he is then living, and, if he is not, shall inform the said Dean S. Edmonds, Jr., if he be then living, so that the said Dean S. Edmonds, or the said Dean S. Edmonds, Jr., if he shall care so to do (but he shall not be obliged to do so) may have an opportunity to make up in part or in full any such deficiency.

## ARTICLE FOURTH

Upon the termination of the Trust hereby created under any event as hereinbefore directed, the Trustee then acting shall dispose of the then principal of the Trust Estate held by it as follows:

(a) It shall pay to the said Mrs. Elsie Searing, if then living, the sum of Five Thousand Dollars ($5,000.00).

(b) It shall pay to the said Mrs. H. Edmonds Noble, if then living, the sum of Ten Thousand Dollars ($10,000.00), or ten percent (10%) of the said principal of the Trust Estate, whichever be the greater.

(c) It shall pay to the said Mrs. Marie C. Moore, if then living, the sum of Twenty-five Thousand Dollars ($25,000.00) or thirty-five percent (35%) of the said principal of the Trust Estate, whichever be the greater.

(d) If the said principal of the Trust Estate shall be insufficient to cover the payments stated in paragraphs (a), (b) and (c), then those payments shall be made in amounts reduced in the same proportion to such extent as is required by the amount of the said principal.

(e) After making the payments herein provided in sub-divisions (a), (b) and (c) in this Article Fourth, it shall pay over, transfer and distribute the then remainder of the Trust Estate, if any, to the then living issue of the said Dean S. Edmonds, Jr., in equal amounts.

Anything in this Article Fourth to the contrary notwithstanding, the said Dean S. Edmonds, Jr., may, by instrument in writing duly acknowledged before a notary public in any jurisdiction and filed with the Trustee hereunder, direct that upon the termination of the Trust hereby created, the distributions hereinbefore in this Article Fourth directed to be made to the said Mrs. Elsie Searing, Mrs. H. Edmonds Noble and Mrs. Marie C. Moore, or such of them as are then living, be increased as the said Dean S. Edmonds, Jr., in his sole discretion, may determine, over the amounts hereinabove in this Article set forth, but in the same relative proportions as the dollars amounts hereinabove stated; and if the said Dean S. Edmonds, Jr., is not then living, or is subject to a disability as set forth in Article Second hereof, the power hereby conferred upon him may be exercised by the then Trustee hereunder. * * *

### ARTICLE TWELFTH

The Grantor contemplates that, at a time or times in the future, he may want to provide for payments similar to those provided for herein to one or more persons additional to those named herein and/or payments in larger amounts to one or more of those who are named herein, and he may do so by means of a Supplemental Indenture making reference to this Indenture and naming as Trustee thereunder the Trustee provided for herein. If that shall be done, the Trustee is hereby authorized to consolidate the two or more Trusts to such extent as is permissible for the purpose of coordinating them and simplifying their administration.

This Indenture and the Trust hereby created shall not take effect until the execution of this Indenture by all of the parties hereto and upon such execution this Indenture and the Trust hereby created shall be and become irrevocable.

On July 10, 1973, the family trust was terminated and the corpus was distributed to the principal beneficiaries according to the terms of the indenture.

At no time did the bank distribute any income or assets of the family trust to decedent.

On the date of decedent's death, the value of the assets of the family trust was $846,545, of which $359,470.36 was attributable to contributions made by decedent and $487,074.64 to contributions made by other persons.

The respondent determined that the entire $846,545 date-of-death value of the assets in the family trust was includable in decedent's gross estate on the theory that the portion attributable to decedent's contributions to the trust was includable under sections 2036 and 2038[1] and that the portion attributable to the contributions of persons other than decedent was includable under section 2041.

Subsequent to the creation of the family trust, decedent created several other trusts (hereinafter the supplemental trusts): two for the benefit of Marie C. Moore and one for the benefit of Elsie Searing, the indentures of which were executed on August 14, 1963, June 28, 1964, and June 29, 1964, respectively. Each supplemental trust was funded separately with adequate principal to provide for the payments directed by their respective indentures. Each supplemental indenture named the bank as trustee and provided that on termination of each supplemental trust, the bank was to pay the principal thereof to itself, as trustee under the family trust. Each supplemental trust was to terminate on the earlier of the date of death of the named beneficiary, the date of the termination of the family trust, or the date of the receipt by the trustee of written directions signed by decedent that the supplemental trust be terminated.

At no time did the bank distribute any income or assets from the supplemental trusts to decedent.

In July 1971, when he was 91 years old, decedent tendered to the bank a document dated July 1, 1971, denoted "Supplemental Indenture of Trust," which purported to amend the terms of the family trust indenture by increasing by an aggregate amount of $11,600, the annual annuities to be paid to Mrs. H. Edmonds Noble, Elsie Searing, and Marie C. Moore. No principal or assets were delivered with the July 1, 1971, instrument to fund the payments called for therein. The bank initially refused to accept

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death.

the document on the advice of counsel that the family trust was irrevocable and could not be amended by decedent. However, responding to the pressure of decedent's insistence and reluctant to jeopardize the possibility of being named executor of decedent's estimated $10 million estate, the bank finally acquiesced. Prior to accepting the July 1, 1971, indenture, the bank insisted that decedent execute a letter of indemnification to protect it against all claims arising in connection therewith. Decedent executed such a letter on November 23, 1971. Subsequently, the bank paid the increased annual payments to the beneficiaries.

Following the July 10, 1973, termination of the family trust, the bank received a "Receipt, Release and Agreement" dated October 30, 1973 (hereinafter the release agreement), by which, among other things, decedent's son and the various beneficiaries of the family trust and the supplemental trusts released and discharged the bank from any and all liabilities with regard to said trusts. In the release agreement, the annuitants benefited by the July 1, 1971, indenture agreed to refund the amounts they had received pursuant to that indenture by having those amounts credited against their respective shares in the final distribution of the family trust principal.

On the date of decedent's death, the aggregate value of the assets in the supplemental trusts was $106,652.53. On its Federal estate tax return, petitioner included $4,553.08, in decedent's gross estate, the value attributable to decedent's contributions to the supplemental trusts. The respondent determined that the entire $106,652.53 value was includable in the decedent's gross estate and accordingly increased the gross estate under section 2041 by the $102,099.45 attributable to contributions made to the supplemental trusts by persons other than decedent.

Decedent created the following trusts (hereinafter the minority trusts) for the benefit of his grandchildren:

(a) Trust for the benefit of Dean S. Edmonds III, born February 3, 1953, created by Indenture dated December 14, 1955;

(b) Trust for the benefit of Louis R. W. Edmonds, born May 14, 1955, created by indenture dated December 14, 1955;

(c) Trust for the benefit of Penelope A. H. Edmonds, born September 30, 1957, created by indenture dated November 22, 1957; and

(d) Trust for the benefit of Louise E. V. Edmonds, born January 15, 1962, created by indenture dated May 31, 1962.

Each minority trust instrument provides for the trustee to make discretionary distributions to the named beneficiary of net income, accumulated income, or trust principal until the beneficiary attains the age of 21, at which time the principal and any accumulated income is to be paid to the beneficiary. The trust instruments further provide that if the beneficiary dies before attaining the age of 21, the trustee is to pay the principal and accumulated income to such persons as the beneficiary might appoint by will, or failing such appointment or the effectiveness thereof, to the estate of the beneficiary. Each minority trust indenture names the bank as trustee.

Article Sixth of each minority trust indenture provides as follows:

### ARTICLE SIXTH

The Grantor reserves to himself and after his death to his Executors the right at any time and from time to time during the continuance of the trust to change the Trustee hereunder after ten days notice in writing which shall specify the name of the trustee to be substituted, the date of such substitution and the time and place within the City of New York where the securities then constituting the trust estate are to be delivered to the substituted trustee and to require the trustee, upon receiving such notice to transfer and deliver to the substituted trustee at the time and place within the City of New York specified in such notice any and all securities, cash and other assets constituting the trust after deducting its lawful compensation and expenses.

Upon its removal as above provided, any Corporate Trustee, shall be entitled to reimbursement from the trusts hereunder for all loans and advances, if any, theretofore made by it and all expenses, including expenses incurred by it in connection with the settlement of its accounts as Trustee. Likewise in the case of the change or removal of any corporate Trustee, it shall be entitled to all fees to which it would be entitled if the trust were fully administered or if the trusts for which it is Trustee were then to terminate.

On the date of decedent's death, the aggregate value of the assets in the minority trusts attributable to the decedent's contributions was $152,987.23. The respondent determined that this amount was includable in decedent's gross estate under sections 2036 and 2038.

All of the trust indentures state that the trusts thereby created are to be governed by the law of the State of New York.

Decedent's first wife, Mary A. Edmonds, died on September 18, 1965. Her will established a residuary trust of which decedent

was the life income beneficiary. The value of the principal of this residuary trust was $3,432,343.84 on the date of Mary A. Edmonds' death.

In computing the credit for tax on prior transfers, petitioner utilized the actuarial tables included at section 20.2031–10, Estate Tax Regs. (6-percent tables), to value the life estate the decedent inherited at the death of his first wife. Respondent determined that the actuarial tables included at section 20.2031–7, Estate Tax Regs. (3½-percent tables), should have been employed, and adjusted the credit against the Federal estate taxes petitioner owed accordingly.

After the death of Mary A. Edmonds, Dean S. Edmonds married, on August 24, 1967, his second wife, Marie C. Moore.

Article Fifth of decedent's last will and testament provides in part, that:

My said wife shall have the privilege of residing in my said home as long as she lives or until she notifies my son and my executor and trustee that she no longer wishes to reside there, or until 12 months have passed since my said wife has ceased to occupy my said home and neither my son nor my executor and trustee has received written notice that my said wife wishes to resume her residence in my said home.

If at any time my said wife notifies my son and my executor and trustee that she no longer wishes to reside in my said home, and that she wishes to purchase another home (whether such other home takes the form of land with buildings and improvements thereon, a cooperative apartment or a condominium) my executor and trustee shall pay to my said wife, from the principal of the trust created by Article FOURTEENTH hereof, such sum not exceeding One Hundred Thousand Dollars ($100,000) as may be required by my said wife to effect the purchase of the new property she has selected for her residence. * * *

Decedent's surviving spouse notified decedent's son and his executor and trustee that she elected to receive out of decedent's estate the $100,000 payment referred to in article Fifth of decedent's will (hereinafter the $100,000 bequest) in order to purchase another home, the purchase price of which was in excess of $100,000. The $100,000 was paid to Marie C. Edmonds by decedent's executor and trustee during October 1975.

Petitioner did not include the $100,000 bequest in computing the marital deduction on Schedule M of its Federal estate tax return as originally filed. However, in its petition to this Court, petitioner claims entitlement to a marital deduction increased by $100,000, on the grounds that the $100,000 bequest was an

interest in property which passed from decedent to his surviving spouse and was not terminable. The aggregate amount of bequests from decedent to his surviving spouse, including the $100,000 bequest, does not exceed 50 percent of the value of decedent's adjusted gross estate.

## OPINION

### Issue 1. Family Trust

The first issue for our decision is whether decedent, in connection with the family trust he created in 1960, reserved the right to increase the required annual payments from the trust, thereby retaining sufficient control over the trust property so that the value of decedent's contributions to the family trust is includable in his gross estate under sections 2036 and 2038.

Dean S. Edmonds (hereinafter decedent or grantor) executed a trust indenture on March 25, 1960, under the terms of which fixed annuities were to be paid to several individuals. Upon termination of the trust, the principal was to be paid to certain of the annuitants and to the issue of decedent's son. The trust indenture, set forth in detail in our findings of fact, provides in article First that in any calendar year in which the trust income is insufficient to satisfy the required annuity payments, the trustee is to pay the deficiency from trust principal unless, pursuant to article Third of the indenture, the grantor or his son elects to make up all or part of the deficiency. The indenture also states that if the grantor decides to provide for annuities to additional persons and/or larger payments to the named beneficiaries, he may do so by means of a supplemental indenture referencing the family trust indenture and naming the bank as trustee. During 1963 and 1964, decedent executed three documents entitled "Supplemental Indenture of Trust." Each referenced article Twelfth of the family trust indenture and created a new trust naming the bank as trustee. Each indenture established a fixed annuity payable to one of the original annuitants under the family trust indenture and provided that on termination of the supplemental trust, the remaining principal was to be added to the principal of the family trust. Each supplemental trust was funded separately with adequate principal to satisfy the payments directed by the supplemental indentures.

In 1971, decedent executed a further "Supplemental Inden-

ture of Trust." Like those executed in 1963 and 1964, this document referenced article Twelfth of the family trust indenture and named the bank as trustee. However, this instrument did not establish a new trust but purported to amend the original family trust indenture by increasing the annuities payable thereunder to three of the original annuitants. No additional property was transferred to the bank to fund these increased payments.

Respondent argues that the inclusion in decedent's gross estate of the value of decedent's contributions to the family trust is required under sections 2036 and 2038 because of powers decedent retained as grantor to add new beneficiaries to the trust and to change the beneficial interests. Respondent's argument is premised on the following provision of the trust instrument:

ARTICLE TWELFTH

The Grantor contemplates that, at a time or times in the future, he may want to provide for payments similar to those provided for herein to one or more persons additional to those named herein and/or payments in larger amounts to one or more of those who are named herein, and he may do so by means of a Supplemental Indenture making reference to this Indenture and naming as Trustee thereunder the Trustee provided for herein. If that shall be done, the Trustee is hereby authorized to consolidate the two or more Trusts to such extent as is permissible for the purpose of coordinating them and simplifying their administration.

This indenture and the Trust hereby created shall * * * be and become irrevocable.

Respondent contends that by the express terms of article Twelfth, decedent retained the unlimited and unrestricted right to both increase the amounts of the annuities to the named beneficiaries and to create additional annuities to be paid out of the family trust. Respondent's position is that this right, together with the article First and Third provisions requiring that the annuities be paid out of trust principal if the income was insufficient, enabled decedent to designate the persons who could possess or enjoy the income and the corpus of the family trust and to change the enjoyment of the property. In essence, respondent argues that decedent retained the power to amend the family trust agreement and actually did so by the July 1971 supplemental indenture. Accordingly, respondent contends that the value of decedent's contributions to the principal of the

family trust is includable in decedent's gross estate under both sections 2036(a)(2)[2] and 2038(a)(1).[3]

Petitioner argues that under the terms of the family trust indenture, decedent retained no power to amend the family trust and his July 1971 attempt to do so was of no effect. Petitioner explains article Twelfth as a means of simplifying the subsequent drafting of trusts and easing administration of future separate trusts.

It is well established that while the taxability of the interest possessed by the decedent is to be determined by Federal law, we must look to local law to determine the legal rights and interests possessed by decedent under the trust instrument. *Morgan v. Commissioner*, 309 U.S. 78 (1940); *Helvering v. Stuart*, 317 U.S. 154 (1942). The interpretation of this trust instrument is governed by the law of New York.

As an initial matter, we note that under New York law, the fact that an inter vivos trust is by its terms irrevocable does not preclude the grantor from amending the trust, provided he has reserved that power. *Commissioner v. Chase Nat. Bank*, 82 F.2d 157 (2d Cir. 1936), cert. denied 299 U.S. 552 (1936); *Guaranty Trust Co. of New York v. Howe*, 193 Misc. 640, 86 N.Y.S.2d 808 (N.Y. County Sup. Ct. 1948). In determining whether a power to alter the terms of a trust has been reserved, the principal rule of construction espoused by New York courts is to ascertain the grantor's intention as expressed in the instrument in the light of the circumstances surrounding and attending its execution, and when ascertained, to effectuate that intention unless contrary to

---

[2]SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

   (1) the possession or enjoyment of, or the right to the income from, the property, or

   (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[3]SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

   (1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate * * * *

public policy or an established rule of law. *In re Fields' Trust,* 302 N.Y. 262, 97 N.E.2d 896 (1951); *Gilbert v. Gilbert,* 39 N.Y.2d 663, 350 N.E.2d 609, 385 N.Y.S.2d 278 (1976). It is the intention which exists at the time of execution which controls, not one thereafter formulated and not expressed in the instrument. *In re Nicol's Trust,* 24 App. Div. 2d 191, 264 N.Y.S.2d 787 (1st Dept. 1965). The record is devoid of any extrinsic circumstances existing at the time of the execution of the instrument which would shed light on decedent's intention concerning his ability to amend the family trust.

Looking to the language of the indenture, articles Second and Fourth specifically give decedent's son contingent powers to increase or decrease the "future [annuity] payments from the Trust Estate" to the named beneficiaries and to increase the amounts of principal to be distributed to the primary beneficiaries upon the termination of the trust. These powers were exercisable by the filing of a formal direction with the trustee.

In contrast, article Twelfth, while referring to "payments similar to those provided for herein" and "payments in larger amounts to * * * those who are named herein," specifies neither the source of these payments nor a mandatory method by which decedent would advise the trustee of an increased charge against the trust income. The first sentence of article Twelfth enables decedent to "provide" for additional payments "by means of a Supplemental Indenture making reference to this [family trust] Indenture and naming as Trustee thereunder the Trustee provided for herein." While this did not limit decedent's power to provide similar annuities through mechanisms other than that described, it is by no means an overt expression of a reserved capability to effect any alteration in the distribution of the fund conveyed under the family trust indenture. To construe this phrase as a reservation of a power to increase the amounts payable out of the family trust requires a reading that is strained and at odds with the clear grant of that power to decedent's son.

The operative portion of the paragraph appears to be the second sentence which authorizes the trustee "to consolidate the two or more Trusts to such extent as is permissible for the purpose of coordinating them and simplifying their administration." Such an administrative power would have been unnecessary if, as respondent urges, decedent retained the power to

increase the required annual payments from the family trust. Under the habendum clause and article Third of the family trust indenture, the family trust was created as a "pour-over" trust; any property subsequently contributed to the trust would become part of the trust estate and would be administered as such. If decedent had retained the power to increase the income distributions from the family trust, the quoted administrative power would have been superfluous. Decedent could have simply exercised such a reserved power of amendment and, if necessary, transferred additional property to fund the augmented payments. The presence of this second sentence, for which respondent has proffered no alternate explanation, indicates that decedent did not intend to retain any power to amend the family trust indenture but thought it necessary to rely on the future establishment of additional trusts in order to increase the annuities for the benefit of the named beneficiaries or to provide similar payments to other persons. We are therefore unable to glean any intent in decedent to retain the power to add new beneficiaries or to change the beneficial interests created by the family trust indenture.

Nor is this result altered by decedent's purported amendment to the family trust indenture in 1971. The New York cases uniformly hold that where the grantor of an inter vivos trust reserves no power to amend the trust, any attempted modification is ineffective. *In re Guaranty Trust Co. of New York*, 74 N.Y.S.2d 559 (N.Y. County Sup. Ct. 1947); *In re Carter's Trust*, 13 Misc. 2d 1040, 178 N.Y.S.2d 569 (N.Y. County Sup. Ct. 1958); *In re Reese's Will*, 21 Misc. 2d 29, 195 N.Y.S.2d 144 (Nassau County Surr. Ct. 1960). Such an attempted modification by the grantor is ineffective even if the trustees join in the amendatory instruments. *In re Mackay's Will*, 36 N.Y.S.2d 551 (Nassau County Sup. Ct. 1942). A requisite to inclusion of the value of property in a decedent's gross estate under section 2036 or 2038 is that the decedent actually had the prescribed right or power of control over the transferred property at the time of his death. As this Court stated in *Neal v. Commissioner*, 8 T.C. 237 (1947):

That the decedent himself had the mistaken notion that he could change the beneficial interests by his 1936 amendment is not sufficient to establish the existence of such power. Even though the decedent did attempt to change the beneficial interests, it does not follow that he, therefore, actually had the

power to alter or amend within the meaning of section [2038(a)(2)]. As we see it, it is of the essence in that section of the code that the decedent *actually* have the power to change the enjoyment at the time of death. [8 T.C. at 246; emphasis in original.]

Accordingly, we hold that the value of decedent's contributions to the family trust is not includable in his gross estate under section 2036 or 2038 inasmuch as he retained no control over the trust estate under article Twelfth[4] of the family trust indenture.

### *Issues 2 and 3. Contributions by Others Than Decedent*

The second and third issues concern the inclusion in decedent's gross estate of the value of the portions of the principal of the family trust and supplemental trusts attributable to contributions thereto by persons other than decedent. The value of these portions of the family trust and supplemental trusts are $487,074.64 and $102,099.45, respectively.

Respondent maintains that inclusion is warranted under section 2041(a)[5] because decedent had a section 2041(b)(1)[6] power of appointment over the principal of the trusts. Respondent argues that under article Twelfth of the family trust indenture,

---

[4]As noted above, art. First of the family trust indenture requires the trustee to make the annuity payments out of trust principal in any calendar year in which the net income from the trust estate is insufficient for that purpose. This duty is expressly made subject to the provisions of art. Third which, inter alia, give the grantor the opportunity to make up any such deficiency. Respondent has not argued that the effect of arts. First and Third, standing alone, is to give decedent the power to control the beneficial enjoyment of the trust property. Rather, respondent's argument for including the value of the trust property in decedent's gross estate is predicated on a construction of art. Twelfth as reserving for the decedent the power to name additional beneficiaries or to increase the amounts of the required payments out of trust income. The issue of whether, even absent such a power to amend, decedent retained the power to control the beneficial enjoyment of the trust property due to arts. First and Third raises complex factual and legal questions which were not raised in the pleadings and which were, at most, addressed only tangentially in the parties' briefs. Therefore, we are not considering the matter.

[5]SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

\*  \*  \*  \*  \*  \*  \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of death a general power of appointment created after October 21, 1942. \* \* \*

[6]Sec. 2041(b) provides in pertinent part:

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate \* \* \*

decedent retained the power to name himself, his estate, his creditors, or the creditors of his estate as the beneficiaries of an unlimited annuity and thereby could deplete or consume the entire family trust residuary. Respondent also maintains that this general power of appointment over the principal of the family trust is tantamount to a power of appointment over the principal of the supplemental trusts because decedent retained the power to terminate the latter trusts, and, upon termination, the principal would be handled by the trustee in accordance with the terms of the family trust indenture.

Petitioner counters that these amounts are not includable in decedent's gross estate because decedent could not amend the family trust in any way and, therefore, he had no power of appointment within the meaning of section 2041.

In light of our holding that decedent did not retain the power to amend the family trust, we hold for petitioner on these two issues.

## Issue 4. Minority Trusts

The fourth issue for our decision is whether the value of the principal of the four minority trusts created by the decedent for the benefit of his grandchildren is includable in the decedent's gross estate under sections 2036 and 2038. By trust indentures dated December 14, 1955, December 14, 1955, November 22, 1957, and May 31, 1962, decedent created four separate trusts, one for each of his grandchildren. Since all four indentures contain identical provisions, our discussion of specific provisions will refer to the articles as numbered in the first trust indenture, dated December 14, 1955.

Under article First of the minority trust indenture, the trustee has full discretionary authority to pay or apply the current or accumulated income or principal of the trust to or for the benefit of the named beneficiary until such beneficiary attains the age of 21.

The indenture also provides as follows:

ARTICLE SIXTH

The Grantor reserves to himself and after his death to his Executors the right at any time and from time to time during the continuance of the trust to change the Trustee hereunder after ten days notice in writing which shall specify the name of the trustee to be substituted, the date of such substitution and the time and place within the City of New York where the securities then

constituting the trust estate are to be delivered to the substituted trustee and to require the trustee, upon receiving such notice to transfer and deliver to the substituted trustee at the time and place within the City of New York specified in such notice any and all securities, cash and other assets constituting the trust after deducting its lawful compensation and expenses.

Upon its removal as above provided, any Corporate Trustee, shall be entitled to reimbursement from the trusts hereunder for all loans and advances, if any, theretofore made by it and all expenses, including expenses incurred by it in connection with the settlement of its accounts as Trustee. Likewise in the case of the change or removal of any corporate Trustee, it shall be entitled to all fees to which it would be entitled if the trust were fully administered or if the trusts for which it is Trustee were then to terminate.

Respondent, relying on sec. 20.2038–1(a)(3), Estate Tax Regs.,[7] and *Mathey v. United States,* 491 F.2d 481 (3d Cir. 1974) (en banc), affg. 32 AFTR2d 73–6213, 73–2 USTC par. 12,936 (3d Cir. 1973), contends that the value of the principal of the minority trusts is includable in decedent's gross estate under section 2038 because, under article Sixth of the indentures, decedent retained the unrestricted right to appoint himself as successor trustee and thereby indirectly retained the discretionary powers to distribute trust income and principal.

Petitioner concedes that if decedent retained the unrestricted power to remove or discharge the trustee at any time and to appoint himself trustee, the value of the principal of the minority trusts would be includable in decedent's gross estate under section 2036.[8] However, petitioner argues that, notwithstanding the fact that article Sixth does not specifically exclude decedent from the class of those who could be substituted as trustees, decedent's intention not to reserve a power to substitute himself as trustee is clear from an examination of the entire

---

[7]Sec. 20.2038–1(a)(3), Estate Tax Regs., provides in pertinent part:

if the decedent had the unrestricted power to remove or discharge a trustee at any time and appoint himself trustee, the decedent is considered as having the powers of the trustee * * *

[8]Sec. 2036 generally requires the inclusion in the decedent's gross estate of the value of any property which the decedent has transferred where the decedent retains the right to designate the persons who shall possess or enjoy the property or the income therefrom.

Sec. 20.2036–1(b)(3), Estate Tax Regs., provides:

(3) The phrase "right * * * to designate the person or persons who shall possess or enjoy the transferred property or the income therefrom" includes a reserved power to designate the person or persons to receive the income from the transferred property, or to possess or enjoy nonincome-producing property, during the decedent's life or during any other period described in paragraph (a) of this section. * * * if the decedent reserved the unrestricted power to remove or discharge a trustee at any time and appoint himself as trustee, the decedent is considered as having the powers of the trustee.

indenture. Petitioner asserts that decedent intended only to be able to substitute a corporate fiduciary as trustee.

The interpretation of these trust instruments is governed by the law of New York. *Morgan v. Commissioner*, 309 U.S. 78 (1940); *Helvering v. Stuart*, 317 U.S. 154 (1942). New York law follows the general rule of construction of trust interests that the grantor's intention, as revealed by the language used in the trust instrument, governs the interpretation of the trust instrument. *In re Fields' Trust*, 302 N.Y. 262, 97 N.E.2d 896 (1951); *City Bank Farmers Trust Co. v. Macfadden*, 52 App. Div. 626, 65 N.Y.S.2d 395 (N.Y. County Sup. Ct. 1946).

Petitioner's claim that decedent's intention was to be able to substitute only a corporate fiduciary as successor trustee rests primarily on the exclusive use throughout the indentures of the neuter pronoun "it" when referring to the trustee and the provision in article Third which empowers the trustee in "its" uncontrolled discretion to invest the trust fund in any "common or commingled fund maintained by the trustee."[9] In addition, petitioner supports its position by pointing out certain "standard clauses" which are absent from the indentures but, according to petitioner, would not have been omitted had decedent intended that the reserved power could be used to substitute an individual as trustee.

We are not persuaded that the trust instruments reflect any particular intent on the part of decedent to restrict his power to name a successor trustee. The trust agreements do not expressly forbid decedent from naming himself trustee. Moreover, the exclusive use of the neuter pronoun is hardly conclusive evidence of such intent. It has been recognized that the word "it" is commonly employed as a shorthand technique in drafting to refer to both corporations and individuals. *Mathey v. United States*, 32 AFTR2d 73–6213, 73–2 USTC par. 12,936 (3d Cir. 1973), affd. en banc on rearg. 491 F.2d 481 (3d Cir. 1974); N.Y. Estates, Powers & Trusts Law sec. 1–1.3(b) (McKinney 1967). Thus, the draftsman may have utilized "it" throughout the indentures as the most efficient pronoun and one that was gramatically consistent with the gender of the trustee originally named in the indentures, the bank.

---

[9] According to petitioner, under New York law, only bank trustees can maintain such funds. N.Y. Banking Law sec. 100–c (McKinney 1971).

Similarly, the express use of the word "it" in the trust article which enables the trustee or successor to receive additional property "conveyed to it" is not conclusive. Article Second provides in full as follows:

*The Trustee*, its successor or successors, *may receive any other property*, real or personal, given, devised, bequeathed, granted, transferred or *conveyed to it* by the Grantor or by any other person or persons for the purposes of and upon the trusts hereby created, and all such property shall be held by the Trustee subject to the terms of this Indenture. [Emphasis added.]

Because the phrase "its successor or successors" is set off by commas, the phrase "conveyed to it" appears to refer to the named trustee only and not to impose any implicit requirement that any successor trustee be a corporation. In addition, the fact that the trust indentures provide certain powers that have relevance only to a corporate trustee does not necessarily mean that decedent thereby intended to restrict his selection of a successor trustee. Article Third of the indenture authorizes the trustee to invest the trust funds in "such stocks, bonds, debentures, notes or other securities or property, real or personal, as in its uncontrolled discretion it shall deem advisable, including any common or commingled fund maintained by the Trustee." The stated intention of this provision is to "give the broadest power and discretion to the Trustee." This appears to be a typical investment powers clause aimed at vesting in the trustee broader investment powers than would otherwise be conferred under New York law (see N.Y. Estate, Powers & Trusts Law secs. 11–1.1(b)(3), 11–2.2(a)(1)(O) (McKinney 1967); *In re Doelger's Estate*, 254 App. Div. 178, 4 N.Y.S.2d 334 (1st Dept.), affd. per curiam 279 N.Y. 646, 18 N.E.2d 42 (1938)), rather than a clause pertaining to candidates for successor trustee.

Nor are we persuaded by the argument that the absence of certain provisions from the trust instruments evidences a limitation on decedent's ability to name successor trustees.

Petitioner points out that the indentures do not contain a provision giving the trustee the right to hire accountants, custodians, or investment counsel or a provision giving decedent or anyone else the power to fill a vacancy created by death, disability, or incapacity. From this, petitioner concludes that decedent intended that only a bank could serve as trustee.

The absence of these provisions is at best inconclusive.

Petitioner may be correct that they were not included because decedent never intended to be able to appoint other than a corporate trustee, hence they were unnecessary. However, this reasoning is tenuous because there are other plausible reasons for the omissions, consistent with an ability to appoint an individual as trustee.

Concerning the absence of a provision giving the trustee the right to hire accountants, custodians, or investment counsel, petitioner states that such a provision is "unnecessary when a corporate trustee is serving because these are the very functions it performs" but would have been "desirable and customary" for an individual trustee who would rarely perform such functions by himself. Petitioner asserts that under the New York law in effect when the trusts were established, an individual trustee appointed under these indentures "would be required to retain others to perform such services and pay for such services from his personal funds."

Our review of New York cases indicates that the pertinent law is not as stringent as petitioner posits. It is true that New York courts have frequently upheld beneficiaries' objections to payments by trustees and executors for legal or accounting services when the service rendered at the expense of the estate was one which the fiduciary should have performed and for which he was compensated by statutory commissions. *In re Feinberg's Estate*, 21 Misc. 2d 715, 196 N.Y.S.2d 393 (N.Y. County Surr. Ct. 1959); *Matter of Lester*, 172 App. Div. 509, 158 N.Y.S. 763 (3d Dept. 1916). However, the courts have allowed such payments where the services are of a specialized nature and the amount paid was reasonable. *In re Ducas' Estate*, 109 N.Y.S.2d 17 (N.Y. County Surr. Ct. 1950), affd. without opinion 279 App. Div. 730, 108 N.Y.S.2d 1016 (1st Dept. 1951); see *In re Edelmuth's Estate*, 73 N.Y.S.2d 886 (N.Y. County Surr. Ct. 1947). The inquiry in these cases is essentially whether the estate is being charged a second time with an expense for which it has already paid, through the fiduciary's commissions. If so, the fiduciary is required to pay for the services from his own funds as augmented by the commissions he receives from the trust or estate. Petitioner has cited no cases, nor has our research uncovered any, showing that this standard varies depending upon whether or not the trustee is expressly given the power to hire accountants or other professionals. In any event, it does not follow that the absence of a

provision authorizing the trustee to hire accountants or investment counsel would preclude decedent from appointing as successor trustee an individual who either could properly perform those functions without outside assistance or who would hire others but pay them from his own commissions.

The most we can say about decedent's failure to reserve the power to fill a vacancy caused by death, disability, or incapacity of a trustee is that it indicates that decedent may not have intended to exercise his broad power to change the trustee by appointing an individual. However, whether a decedent intended to exercise the power is not determinative of whether he retained the power to do so. *Mathey v. United States*, 32 AFTR2d 73–6213, 73–2 USTC par. 12,936 (3d Cir. 1973), affd. en banc on rearg. 491 F.2d 481 (3d Cir. 1974); see *Durst v. United States*, 409 F. Supp. 1046 (W.D. Pa. 1976), affd. 559 F.2d 910 (3d Cir. 1977). Furthermore, decedent may have thought it unnecessary to specifically retain the power to fill a vacancy on the theory that it was encompassed by his power "to change" the trustee.

Any inference of decedent's intent that might be drawn from the absence of these provisions is outweighed by the structure of the indentures. Decedent retained the power to change the trustee in the first paragraph of article Sixth. Throughout that paragraph, the fiduciary is referred to simply as "the trustee." The second paragraph, however, deals specifically with certain rights of "any corporate trustee." This contradistinction is strong evidence that decedent contemplated that noncorporate as well as corporate trustees could be appointed. See *Mathey v. United States, supra*. We are unable to construe decedent's intent from language absent from the instruments as contrary to the intent evidenced by the language present.

Accordingly, we hold that the fair market value of the principal of the minority trusts is includable in decedent's gross estate.

## Issue 5. Computation of Life Interest in Trust

The fifth issue is whether respondent properly computed the value of decedent's life interest in a trust for purposes of calculating the section 2013 credit for tax on prior transfers.

Mary A. Edmonds, decedent's first wife (hereinafter the transferor), died testate on September 18, 1965, leaving a will which bequeathed to decedent a life estate in a testamentary

residuary trust. At the date of the transferor's death, the value of the testamentary trust was $3,432,343.84.

Section 2013 provides in part:

SEC. 2013. CREDIT FOR TAX ON PRIOR TRANSFERS.

(a) GENERAL RULE.—The tax imposed by section 2001 shall be credited with all or part of the amount of the Federal estate tax paid with respect to the transfer of property * * * to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death. * * *

(b) COMPUTATION OF CREDIT.—Subject to the limitation prescribed in subsection (c), the credit provided by this section shall be an amount which bears the same ratio to the estate tax paid (adjusted as indicated hereinafter) with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor (determined for purposes of the estate tax) decreased by any death taxes paid with respect to such estate. * * *

*　　*　　*　　*　　*　　*　　*

(d) VALUATION OF PROPERTY TRANSFERRED.—The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor * * * [with certain adjustments not relevant here].

There is no dispute between the parties regarding the estate's entitlement to the credit. The question to be resolved is how to determine the "value of the property transferred" to the decedent.

In calculating the Federal estate tax due, petitioner computed the section 2013 credit by valuing decedent's life estate in accordance with section 20.2031–10, Estate Tax Regs. This section contains actuarial tables, incorporating a 6-percent interest factor, which are to be used to value interests in property for estates of decedents dying after December 31, 1970. Section 20.2031–7, Estate Tax Regs., contains similar tables, incorporating a 3½-percent interest factor, to be used to value interests in property for estates of decedents dying on or before December 31, 1970. Respondent recalculated the credit by valuing decedent's life estate using the 3½-percent tables, which resulted in a smaller credit and, consequently, an increased deficiency.

Section 2013, the successor of section 812(c) of the Internal Revenue Code of 1939, replaced the section 812(c) deduction for property previously taxed with an estate tax credit. The section 812(c) deduction was available only to the extent that the value of the previously taxed property was included in the decedent's

gross estate. The legislative history is clear that to eliminate the tracing requirement, the credit was to be based upon the value of the property at the time of the death of the transferor.[10]

Petitioner contends that although the entire residuary trust was valued at the date of the transferor's death, the interest that passed to decedent, the life estate, was not valued at that time. Petitioner argues that since decedent died after December 31, 1970, the estate tax regulations require that the value of his life estate be determined under the 6-percent tables and that respondent's utilization of the 3½-percent tables is contrary to the regulations.

Respondent, on the other hand, claims that using the 3½-percent tables results in the proper computation of the value of decedent's life estate at the date of death of the transferor, as is mandated by section 2013(d). Respondent also suggests that using the 6-percent tables in this instance would be a windfall to decedent's estate because it could result in obtaining a credit in a larger amount than was paid in estate taxes by the first estate. While we believe that section 2013(b) prevents this type of windfall by limiting the amount of the credit to a proportionate part of the estate tax paid by the transferor's estate nevertheless, we agree with respondent that the 3½-percent tables are to be applied in valuing decedent's life estate for purposes of calculating the credit in this case.

Petitioner's argument that "the property transferred to decedent" was never valued at the transferor's death strikes us as somewhat specious. Although it is true that the life estate and any remainder interests in the residuary trust were not separately valued for purposes of determining the transferor's Federal estate tax liability, nevertheless, it cannot be denied that their aggregate values were included in the $3,432,343.84 value of the residuary trust. In short, the $3,432,343.84 value represents the sum of the values of the interests in the residuary trust created under the transferor's will. Section 20.2013–4(a), Estate Tax Regs., provides that the value of a life estate received by a decedent is determined "as of the date of the transferor's death on the basis of recognized valuation principles (see especially secs. 20.2031–7 and 20.2031–10)." The valuation

---

[10]See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591) 83d Cong., 2d Sess 89 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591) 83d Cong., 2d Sess. 121 (1954).

tables contained in these two sections merely provide a mechanism by which the aggregate value of the trust is to be allocated among the various interests. Contrary to petitioner's assertion, the regulations do not require that decedent's life estate be valued according to the actuarial tables applicable to estates of decedents dying after December 31, 1970. The pertinent inquiry for section 2013 purposes is the value of decedent's life estate at the time of the transferor's death, not at the time of decedent's death.

In this connection, the legislative history of section 2013 provides the following example of the rules under which property is valued for purposes of computing the credit:

if A transfers a life estate in property to B, and the remainder interest to C, *the value of the life estate at the time of A's death* would form the basis for the computation of B's credit for the estate tax paid on the transfer by A, and the value of the remainder interest at the time of A's death would be used in determining C's credit. [S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 122 (1954); emphasis added.]

Therefore, respondent properly applied the 3½-percent actuarial tables contained in section 20.2031–7, Estate Tax Regs., in computing the section 2013 credit.

## Issue 6. Marital Deduction

The final issue is whether petitioner is entitled to a marital deduction for a $100,000 bequest to decedent's surviving spouse.

Article Fifth of decedent's will is set out in pertinent part in our findings of fact. In essence, this portion of the will provides that decedent's surviving spouse could reside in decedent's home for as long as she lived or notify decedent's son, executor, and trustee that she wished to purchase a different home, in which event the executor and trustee were directed to "Pay to my said wife, * * * such sum not exceeding One Hundred Thousand Dollars ($100,000) as may be required by my said wife to effect the purchase of the new property she has selected for her residence." Decedent's surviving spouse so notified the executor and trustee and, in 1975, was paid $100,000 out of the principal of a testamentary residuary trust created for the benefit of decedent's son, grandchildren, and great grandchildren, pursuant to the terms of the will.

Section 2056(a) allows a deduction in computing the taxable estate of a decedent "equal to the value of any interest in

property which passes or has passed from the decedent to his surviving spouse," but not in excess of one-half of the adjusted gross estate. Section 2056(b) defines certain terminable interests which are nondeductible.[11]

Petitioner claims that the right to elect the $100,000 bequest is an absolute interest in property which vested immediately under local law and that once the cash bequest was elected and actually passed to decedent's surviving spouse, it was deductible under section 2056. Respondent claims that the interest bequeathed was a terminable interest and therefore does not qualify for the marital deduction.

The primary focus of petitioner's argument is on establishing that the surviving spouse's right to elect to receive the $100,000 bequest is an "interest in property" as that term is used in section 2056. In support of its claim, petitioner relies on the opinions in *Estate of Mackie v. Commissioner*, 64 T.C. 308 (1975), affd. per curiam 545 F.2d 883 (4th Cir. 1976); *Estate of Neugass v. Commissioner*, 555 F.2d 322 (2d Cir. 1977), revg. 65 T.C. 188 (1975); and *Estate of Tompkins v. Commissioner*, 68 T.C. 912 (1977), as espousing the principle that a testamentary right to elect between alternate bequests is itself an absolute interest in property so long as under the applicable State law the right to so elect is effective as of the date of decedent's death. Initially, we note that in each of the cited cases the surviving spouse was given an *absolute* right to take outright a specified portion of the decedent's estate. In this case, the surviving spouse received no such absolute right. Instead, she received the right to receive up to $100,000 subject to the conditions that she desire to purchase a new residence and that the payment be required to effect such purchase. Moreover, unlike the litigation posture of the cases petitioner cites, in this case respondent has not argued that the right of election is not an "interest in property" which passed

---

[11] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

from decedent to his surviving spouse. Therefore, for purposes of this opinion, we will consider that issue as having been conceded by respondent.

The pertinent inquiry thus is whether the interest is a nondeductible "terminable interest."

Petitioner contends that the interest is not terminable because the only contingencies to which the exercise of the right to receive the $100,000 bequest was subject were, essentially, insignificant. Petitioner correctly points out that this Court has held that neither the requirement that an affirmative election be made in a formal writing nor the fact that the surviving spouse may die prior to making the election renders the interest "terminable." *Estate of Mackie v. Commissioner, supra; Estate of Tompkins v. Commissioner, supra.* However, petitioner has ignored the major limitation on the receipt of the $100,000 bequest. Decedent's surviving spouse could receive the bequest only if she satisfied the condition precedent of purchasing a new residence. Since there was no way of knowing, at the time of decedent's death, whether the surviving spouse would purchase a new home, or how much of the $100,000 would be needed to effect such a purchase, respondent contends that the $100,000 bequest was contingent pursuant to section 2056(b)(1) and does not qualify for the section 2056(a) deduction. We agree.

The definition of a "terminable interest" has been concisely summarized in *Allen v. United States*, 359 F.2d 151, 154 (2d Cir. 1966), cert. denied 385 U.S. 832 (1966), as follows:

A terminable interest is defined, in general, as one which possesses the three characteristics found in sections 2056(b)(1)(A) and (B). First, it must be an interest in property which will terminate upon the occurrence or nonoccurrence of an event or upon the lapse of time. Second, another interest in the same property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. And third, such other person must be able to possess or enjoy a part of such property upon the termination of the spouse's interest. With certain exceptions not relevant to this case, the interest bequeathed to a spouse qualifies for the marital deduction unless all three of these characterics are present.

It is now well settled that the determination of whether an interest is terminable is to be judged in the light of events at the precise moment of the decedent's death. * * * [Fn. ref. omitted.]

Article Fifth of decedent's will gave the surviving spouse a life estate in decedent's residence and the right to receive up to $100,000 by relinquishing the life estate and purchasing a new

residence. The life estate is clearly a terminable interest. Sec. 20.2056(b)–1(b), Estate Tax Regs. The right to receive the $100,000 bequest is also a terminable interest due to the substantial condition attached to the surviving spouse's enjoyment of the bequest. Regardless of whether the interest is considered as a vested interest subject to divestment or as a contingent interest, the fact that the bequest was not payable until a specified event occurred, i.e., the surviving spouse's purchase of a new residence, causes the interest to be terminable. See S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. (1948), 1948–1 C.B. 331, 335–336. The second and third elements of a terminable interest are clearly met here because the $100,000 bequest was payable out of the principal of a testamentary trust the decedent created for the benefit of persons other than the surviving spouse. Had the surviving spouse not decided to purchase a new residence but either continued to live in decedent's residence or moved to a rental apartment, she would not have been entitled to receive the $100,000 bequest and the trust beneficiaries would have obtained the possession and enjoyment thereof.

We conclude that petitioner is not entitled to the disputed marital deduction.

*Decision will be entered under Rule 155.*